UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES VILLA FLORES,<br><br>    Plaintiff,<br><br>    v.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE SANTA RITA JAIL, et al.,<br><br>    Defendants. | Case No. 24-cv-09431-LJC<br><br>**SECOND ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

Andres Villa Flores, a pretrial detainee at the Santa Rita Jail proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against "Alameda County Sheriff's Office staff at Santa Rita Jail," "Wellpath Medical Services staff RNs/doctors," and "Stanford Health Care staff RNs/doctors." The Court previously dismissed the complaint with leave to amend. Dkt. No. 6. Plaintiff filed a First Amended Complaint (FAC), Dkt. No. 7, which is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons identified below, the FAC will again be dismissed with leave to amend.

## DISCUSSION

### A.    Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

1    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
2  claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not
3  necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the
4  grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).
5  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more
6  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
7  do. . ... Factual allegations must be enough to raise a right to relief above the speculative level."
8  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must
9  proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. All or part of
10 a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an
11 arguable basis in either law or in fact.

12   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:
13 (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that
14 the alleged violation was committed by a person acting under the color of state law. *See West v.*
15 *Atkins*, 487 U.S. 42, 48 (1988).

16   **B.   Legal Claims**

17   Plaintiff's FAC only lists as defendant "Alameda County Sheriff's Office Santa Rita Jail,
18 et al.," but identifies a number of individuals by name or role throughout the narrative section.

19   He alleges as follows: he was improperly placed on "Move In Restraints" status on July
20 29, 2024, the day after he was taken into Alameda County custody. The custody status caused him
21 cruel and unusual punishment. He was held in the court holding cells in restraints all day long, and
22 was unable to use the restroom or sit or lie down.

23   Because of the restraints, plaintiff slipped and fell and injured himself on July 30, 2024,
24 while being transported to court. Plaintiff is mobility impaired. He previously had knee
25 reconstruction and foot and elbow surgery. He was unable to brace himself in any way while
26 exiting. The only deputy within the transport vehicle, Deputy Lawrence, did not assist him in
27 exiting the vehicle, and the vehicle did not have handrails. Plaintiff also alleges that the county has
28 no policy or procedure for assisting detainees with mobility impairments to exit the transport

1  vehicle while they are in restraints.

2  Plaintiff was transported to Stanford Valley Care in Pleasanton following this incident. The
3  medical staff did not ask plaintiff any questions about his injuries directly. He attempted to
4  address his attending Nurse Doe, but Nurse Doe was "more concerned about making the escorting
5  deputies feel comfortable and getting coffee for them." His repeated requests to talk to a doctor
6  went unanswered. A CT scan was done only of his head, as the deputy who witnessed his injury
7  had reported that he had only hit his head on the transport van cage door and that was the extent of
8  his injury. A female Doctor Doe came to his bed area and spoke to the escorting deputies, telling
9  them that plaintiff was cleared to be returned to Santa Rita jail. Plaintiff told the transporting
10 deputies T. Nelson and A. McCallon that he could not be cleared because he had not been
11 examined nor had any direct conversation with the Doe nurse or Doe doctor.

12 Plaintiff alleges that deputies T. Nelson and A. McCallon violated his rights by accepting
13 Doctor Doe's conclusion that he was medically cleared while knowing that he had not been
14 properly examined. Plaintiff's neck and lower back and tail bone were not x-rayed until months
15 later.

16 Plaintiff alleges ongoing failure at the jail to properly treat injury to his right hand, causing
17 permanent damage. Plaintiff injured his right hand when he slipped while exiting the shower on
18 November 28, 2024 and landed on it. He was using the assigned handicapped shower and it had no
19 floor grid to prevent slipping on standing water. Doe Nurse 4 viewed his hand on November 29
20 and said it looked like it could be fractured and she would inform a doctor and make sure he got x-
21 rays, but that did not happen. Plaintiff's requests for medical care went unanswered for six days by
22 different nurses and one doctor. Plaintiff also informed housing staff about his injury. RN H. Choi
23 saw his hand along with three other day shift nurses while his index bone was popping up from the
24 top of his hand. He was also seen by a doctor on the doctor's line, Doe Doctor 4, on Sunday,
25 December 1, 2024, who would not send him out for treatment. Doe Doctor 4 informed him that he
26 had an ortho doctor office visit coming up and that it would not matter that a week had passed
27 before his bones would be casted. Plaintiff "feel[s] this is just their way (Wellpath Medical
28 Services) to keep medical cost down or lower by dragging medical attention and treatment out as

1   long as possible, becoming chronic care, allowing a name change of an injury to become a method
2   of how an injury is post treated." Dkt. No. 7 at 15. Requests for outside treatment are blocked and
3   then inmates leave jail custody.
4         Ortho Doctor Doe, who cast his hand, continues to insist that there is nothing wrong with
5   his hand although it is easy to see the damage. Plaintiff's hand developed an abscess that he
6   believes was caused by Ortho Doctor Doe not casting his hand correctly.
7         Doctor Doe 3 prescribed medication for the infection as well as hot pads and dressing
8   changes for the open wound that was leaking pus and blood after Ortho Doctor Doe refused to
9   treat plaintiff. It was only by luck that Doctor Doe 3 was in the housing unit and willing to speak
10  to plaintiff at that time.
11        The RN who was assisting Ortho Doctor Doe violated plaintiff's rights by allowing him to
12  be sent out of the Ortho Doctor Doe's office without medical attention and treatment for his open
13  wound. The RN only provided him with a hand wrap and dressing gall after seeing the pus and
14  blood. Ortho Doctor Doe also viewed the pus and blood. On February 18, 2025, plaintiff was
15  again sent out of Ortho Doctor Doe's office, who refused to acknowledge that plaintiff's hand
16  wound still existed. Plaintiff's index finger is set down further than his other fingers and there is a
17  lump behind the index knuckle.
18        Plaintiff has pain in his head, neck, and shoulder at night. He cannot stand or sit for long
19  periods of time without pain and numbness.
20        Plaintiff seeks damages. He has also filed a separate motion for injunctive relief. See Dkt.
21  No. 8 (asking for a "an order of treatment to my right hand"). Plaintiff may include his request for
22  injunctive relief if he chooses to file another amended complaint. Injunctive relief can only be
23  ordered against a party in the lawsuit.
24      **C.**    **Analysis**
25        The Court previously dismissed plaintiff's complaint with leave to amend because he had
26  "not identified any appropriate defendants for his claim that he has not received adequate medical
27  treatment." Dkt. No. 6 at 3. In his FAC, plaintiff has named a number of individuals throughout
28  his narrative, but has not identified the defendants whom he intends to sue. If he chooses to file a

4

second amended complaint (SAC), he must name who he wishes to sue and clearly identify each person as a defendant.

Plaintiff raises two separate incidents in his complaint: a fall in July 2024 and another fall in December 2024. He also challenges his treatment by different health care staff for injuries caused by the falls. To the extent plaintiff alleges that both falls were the result of a failure to accommodate his disability, the claims could be sufficiently related to properly belong in the same lawsuit. Plaintiff may state a claim against Alameda County under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.§ 12101 et seq., and section 504 of the Rehabilitation Act, for denying him access to safe transport and showers and failing to accommodate his disability by not providing a protective floor grid in the handicapped shower and by not providing handrails in the transport van or any accommodations to enable him to safely exit the vehicle. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Olmstead v. Zimring*, 527 U.S. 581, 589-91 (1999).

Plaintiff may also state a claim against Deputy Lawrence # 2512 under 42 U.S.C. § 1983 for deliberate indifference to his safety needs in violation of the due process clause of the Fourteenth Amendment for failing to help him exit the transport vehicle.

Plaintiff may also state a claim against the Doe Nurse 4 who saw him on November 29, 2024, as well as RN H. Choi, and the Doe Doctor 4 who saw him on December 1, 2024, and failed to order emergent care despite his apparent serious hand injury.

Plaintiff's FAC fails to state a claim against Ortho Doctor Doe, Ortho Nurse Doe, and/or Doctor Doe 3 because his allegations do not show that these people were objectively deliberately indifferent to a serious medical need. Even medical negligence does not rise to the level of a constitutional violation.

Plaintiff may choose to amend his complaint within 28 days of the date of this order to identify to the Court whom he intends to sue as to defendants and for what claims. He may provide more detail about his allegations against Ortho Doctor Doe, Ortho Nurse Doe, and/or Doctor Doe 3 to show how they were deliberately indifferent. He should provide the dates of the interactions he describes as well as what care he believes each defendant should have provided at

each time. He should be aware that a difference of opinion between himself and a provider about what treatment was required does not amount to a constitutional violation.

Plaintiff also claims that his classification status violated his constitutional rights, but names no defendant for that claim. Plaintiff may choose to name a defendant for this claim if he files a SAC.

## CONCLUSION

1. Even liberally construed, the allegations do not give rise to any federal claims against the defendant. These claims are dismissed with leave to amend to remedy the deficiencies noted above.

2. If Flores wishes to file a Second Amended Complaint (SAC), he must do so within **twenty-eight days** from the date of this order. The SAC must include the caption and civil case number used in this Order and the words SECOND AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the original complaint, Flores must include in it all the allegations he wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from his original complaint or FAC by reference. Failure to amend within the designated time will result in the dismissal of this case with prejudice.

3. It is Flores's responsibility to prosecute this case. He must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

4. The Clerk shall include a copy of the Court's prisoner complaint form with plaintiff's copy of this Order.

**IT IS SO ORDERED.**

Dated: May 21, 2025

LISA J. CISNEROS
United States Magistrate Judge